# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| THEODORE KENNEDY, JR. et al., | ) |
| Plaintiffs, | ) |
| vs. | ) Case No.: 2:08-cv-01102-GMN-RJJ |
| CARRIAGE CEMETERY SERVICES, INC. et al., | ) **ORDER** |
| Defendants. | ) |

This case arises out of the accidental cremation of Theodore Kennedy, contrary to the wishes of his family that he be buried. Defendant Palm Mortuary has settled with Plaintiffs, leaving Carriage Cemetery Services, Inc. ("Carriage") as the only remaining Defendant. Pending before the Court is Carriage's Motion for Partial Summary Judgment (#98). Plaintiffs filed a response two days late.[1] For the reasons given herein, the Court grants the motion in part and denies it in part.

**I.    FACTS AND PROCEDURAL HISTORY**

On December 7, 2007, Theodore Kennedy ("Kennedy") passed away from cancer. (#56 ¶ 15). Kennedy was survived by his son, Plaintiff Theodore Kennedy, Jr.; his brothers, Plaintiffs

---

[1] This constitutes consent to granting the motion. L.R. 7-2(d).

James Kennedy, Willie Wade, and Carnell Washington ("Washington"); his sister, Plaintiff Viola Washington; and two sisters who are not parties to this action. Wade and Washington contracted with Carriage to provide burial and funeral services for Kennedy. (*Id.* ¶ 17). Plaintiffs had previously made known to Carriage's representatives Shannon Nordyke and Daniel Lang their distaste for the practice of cremation, and Carriage's representatives assured them that Kennedy could not be cremated without obtaining the family's consent. (*Id.* ¶ 14). On December 12, 2007, Nordyke asked Wade to come to her office alone where she informed Wade that Palm Mortuary had cremated Kennedy's remains after Carriage transferred his remains there. (*Id.* ¶¶ 19–20).

On July 28, 2008, the Estate of Theodore Kennedy, Willie Wade, Carnell Washington, Viola Washington, James Kennedy, and Theodore Kennedy, Jr. sued Carriage in the Clark County District Court on nine causes of action: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) breach of fiduciary duty; (4) negligent misrepresentation; (5) negligence; (6) negligent interference with remains and intentional mishandling of a corpse; (7) intentional infliction of emotional distress ("IIED"); (8) negligent infliction of emotional distress ("NIED"); and (9) unjust enrichment. (#1, Ex. A). Defendants removed.

On September 18, 2009, the Court granted Plaintiffs leave to amend the Complaint, with the caveat that no claims could lie by the Estate for emotional distress or by the Estate, James Kennedy, or Viola Washington for breach of fiduciary duty. (*See* #64 at 6:4–8). The First Amended Complaint ("FAC") (#56) added Palm Mortuary as a Defendant[2] and listed ten causes of action: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3)

---

[2]Palm Mortuary has since settled with Plaintiffs.

breach of fiduciary duty; (4) negligent misrepresentation; (5) negligence; (6) negligent interference with remains and intentional mishandling of a corpse; (7) IIED; (8) NIED; (9) unjust enrichment; and (10) declaratory relief.

Carriage, the only remaining Defendant, has moved for partial summary judgment on the causes of action for breach of the covenant of good faith and fair dealing, breach of fiduciary duty, negligent misrepresentation, unjust enrichment, IIED, and NIED. Carriage also requests summary judgment on the issue of punitive damages.

## II. SUMMARY JUDGMENT STANDARDS

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving

party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the

truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. ANALYSIS

### A. Breach of the Covenant of Good Faith and Fair Dealing

Every contract gives rise to a duty not to act arbitrarily or unfairly to the detriment of the other party. *Nelson v. Heer*, 163 P.3d 420, 427 (Nev. 2007). Breach of this duty is a tort different in nature from a claim for the underlying breach of contract. *See Ins. Co. of the West v. Gibson Tire Co., Inc.*, 134 P.3d 698, 702 (Nev. 2006). A bad faith claim is predicated on the abuse of a fiduciary relationship existing between parties to certain kinds of contracts; it does not arise simply from a particularly egregious or willful breach of a contract, as litigants often imply by reflexively pleading bad faith along with nearly every breach of contract claim:

> Although every contract contains an implied covenant of good faith and fair dealing, an action in tort for breach of the covenant arises only "in rare and exceptional cases" when there is a special relationship between the victim and tortfeasor. A special relationship is "characterized by elements of public interest, adhesion, and fiduciary responsibility." Examples of special relationships include those between insurers and insureds, partners of partnerships, and franchisees and franchisers. Each of these relationships shares "a special element of reliance" common to partnership, insurance, and franchise agreements. We have recognized that in these situations involving an element of reliance, there is a need to "protect the weak from the insults of the stronger" that is not adequately met by ordinary contract damages. In addition, we have extended the tort remedy to certain situations in which one party holds "vastly superior bargaining power."

*Id.* (footnotes omitted). The Washington Supreme Court has similarly described the bad faith tort as "the intentional abuse of a fiduciary relationship." *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998). Accordingly, the most common and appropriate targets of bad faith claims are insurers. *See, e.g.*, *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009).

The threshold inquiry, therefore, is whether a funeral home, cemetery, or mortuary owes a fiduciary duty to its bereaved customers. The Nevada Supreme Court does not appear to have addressed the issue, but the weight of authority is against finding any fiduciary duty. The South Dakota Supreme Court, for example, has ruled that there is no fiduciary relationship between a city cemetery and the parents of a decedent interred there, because although the parents purchased a plot and attendant services, they "did not relinquish control over confidential decision making inherent in fiduciary relationships." *Gakin v. City of Rapid City*, 698 N.W.2d 493, 500 (S.D. 2005). The Ohio Court of Appeals has specifically held that as a matter of law there is no fiduciary relationship between funeral homes and their customers in wrongful burial cases. *See Evans v. Chambers Funeral Homes*, No. 89900, 2008 WL 2766173, at *3 (Ohio Ct. App. July 17, 2008). The United States District Court for the Northern District of Georgia recently found that "Georgia law does not recognize a fiduciary duty between funeral homes and persons contracting for the services of funeral homes." *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 683 (N.D. Ga. 2003). The California Court of Appeals has ruled that there is no fiduciary duty for a mortuary to provide an appropriate and dignified burial service, but noted in dicta that it is not impossible that there may be a fiduciary duty in connection with statutory obligations to prepare and expeditiously dispose of remains. *See Wilson v. Houston Funeral Homes*, 50 Cal. Rptr. 2d 169, 178 (Ct. App. 1996). The FAC ultimately alleges a duty to provide an appropriate and dignified burial service, not a duty to properly dispose of the body for public health reasons. *See id.* ("In our view, this duty cannot properly be described as a fiduciary one. Rather, as we have explained above, it is a duty arising from the mortuary's 'special relationship' with the family by virtue of the nature of the services the mortuary agrees to perform beyond mere disposal of the body in conformity with legal requirements.").

On the other hand, the North Carolina Court of Appeals has written in dicta that "a personal service contract to provide funeral arrangements might, in appropriate factual circumstances, give rise to a fiduciary relationship." *Pacheco v. Rogers & Breece, Inc.*, 579 S.E.2d 505, 510 (N.C. Ct. App. 2003). That court found no fiduciary relationship between a cemetery and a widow who had not maintained contact with the cemetery for seven years and had failed to object to her mother-in-law's court petition to have her deceased husband's remains disinterred. *See id.* at 506, 510.

In summary, it does not appear that any court has held that a fiduciary relationship exists in circumstances such as those here. The Court will therefore grant the motion as against this cause of action in tort.

Plaintiffs argue that this cause of action also lies in contract, because it essentially constitutes a breach of contract for one party to act arbitrarily or unfairly to disadvantage the other party under the contract. However, Plaintiffs allege negligence, not a purposeful circumvention of the contract in order to cheat Plaintiffs. Incidentally, Defendant has not moved for summary judgment on Plaintiffs' breach of contract claim, and the undisputed facts in this case make it almost certain that Defendant will be held liable for breach of contract. A verdict for a breach of the contractual duty of good faith would be duplicative, because this cause of action is essentially a failsafe for when a defendant does not in fact violate contractual terms but treats the plaintiff unfairly under it:

> A good, illustrative example of a claim for contract damages for breach of the covenant of good faith and fair dealing can be seen in percentage lease cases. For example, if a lessee agrees to pay a certain percentage of gross sales receipts as rental and then deliberately alters its business in a way that reduces expected sales (say, by diverting business to another store for the sole purpose of bringing down the rental), the lessee would not be acting in good faith. In such a case the lessee would be abiding with the literal terms of the contract but could still be liable for losses resulting from breach of the covenant of good faith.

*Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 924 n.6 (Nev. 1991) (citation omitted).  There is no evidence of an analogous fact pattern in this case.  Here, the Defendant is alleged to have violated the actual terms of the contract.

### B. Breach of Fiduciary Duty

Because this cause of action is redundant with the bad faith tort claim, and because there is no fiduciary duty in this case, the Court will grant the motion as against this cause of action.

### C. Negligent Misrepresentation

In Nevada,

> a claim for negligent misrepresentation requires a plaintiff to plead: 1) a representation that is false; 2) that the representation was made in the course of the defendant's business or in any action in which he has a pecuniary interest; 3) the representation was for the guidance of others in their business transactions; 4) the representation was justifiably relied upon; 5) that such reliance resulted in pecuniary loss to the relying party; and 6) that the defendant failed to exercise reasonable care or competence in obtaining or communicating the information.

*G.K. Las Vegas Ltd. P'ship*, 460 F. Supp. 2d at 1262.  Under Rule 9(b), circumstances constituting fraud or mistake must be stated with particularity. Fed. R. Civ. P. 9(b).  This has been construed to require a plaintiff to "state precisely the time, place and nature of the misleading statements, misrepresentations and specific acts of fraud." *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994).  A plaintiff must plead facts such as "he bought a house from defendant, that the defendant assured him that it was in perfect shape, and that in fact the house turned out to be built on a landfill . . . ." *Warshaw v. Xoma Corp.*, 74 F.3d 955, 960 (9th Cir 1996) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)).  The plaintiff must also "set forth an explanation as to why the statement or omission complained of was false and misleading." *In re GlenFed Sec. Litig.*, 42 F.3d at 1548.

/ / /

The negligent misrepresentation claim is based on a December 10, 2007 statement by a representative of Defendant, Daniel Lang, that Kennedy could not be cremated without Plaintiffs' consent. (First. Am. Compl. ¶ 14).  The FAC is not verified.  Although Plaintiffs have not adduced evidence to support this claim, they need not do so, because Defendant has not carried its initial burden under summary judgment to negate the claim.  Mr. Lang did not testify at his deposition that he never made the alleged representation. (*See* #98, Ex. H).  In fact, he admits he did not have authorization from Plaintiffs to cremate Mr. Kennedy. (*See id.*, Ex. H, at 23:23–24:4).  Carriage also argues that this claim fails as a matter of law because the only injury Plaintiffs allege to have suffered due to the misrepresentation—personal injury, as opposed to pecuniary loss—is not cognizable under a negligent misrepresentation claim, *see Bank of Nev. v. Butler Aviation-O'Hare, Inc.*, 616 P.2d 398, 399 n.1 (Nev. 1980) (citing Restatement (Second) of Torts § 552); however, Plaintiffs do allege pecuniary loss via payment for services.  The Court will therefore deny the motion as to this cause of action.

### D. Unjust Enrichment

In Nevada, the elements of an unjust enrichment claim or "quasi contract" are: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) acceptance and retention of the benefit by the defendant (4) in circumstances where it would be inequitable to retain the benefit without payment. *See Leasepartners Corp., Inc. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997) (quoting *Unionamerica v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981) (quoting *Dass v. Epplen*, 424 P.2d 779, 780 (Colo. 1967))).  An indirect benefit will support an unjust enrichment claim. *Topaz Mut. Co., Inc. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992) (recognizing an actionable unjust enrichment claim where there was an indirect benefit conferred upon the defendant).  Unjust enrichment is an equitable

substitute for a contract, and an action for unjust enrichment therefore cannot lie where there is an express written agreement. *See Marsh*, 839 P.2d at 613 (citing *Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 824 (Nev. 1977); 66 Am. Jur. 2d *Restitution* §§ 6, 11 (1973)). Here, Plaintiffs specifically allege Wade and Washington entered into a contract with Carriage. (#56 ¶ 17). Plaintiffs have agreed to withdraw this cause of action based on their own research of the case law. (*See* #101 at 21:6–10). The Court will therefore grant the motion as to this cause of action.

### E. IIED

The elements of an IIED claim are "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Star v. Rabello*, 625 P.2d 90, 91–92 (Nev. 1981).

Plaintiffs allege the reckless handling of Kennedy's remains contrary to the wishes of the decedent and the family. This is sufficient to satisfy the first element. Plaintiffs also allege serious mental injuries and emotional distress caused by the accidental cremation. However, most of the Plaintiffs allege no physical injury or illness caused by the alleged emotional distress, which is required when there is no physical impact to the Plaintiff. *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998).

The emotional harm alleged by Plaintiffs is not actionable under an IIED claim. Insomnia and nightmares standing alone will not support an IIED claim in Nevada. In *Miller v. Jones*, the Nevada Supreme Court affirmed summary judgment against an IIED claim where:

> [plaintiff failed] to point to any evidence which demonstrate[d] that he suffered from severe or extreme emotional distress. Although [plaintiff] stated in his deposition that he was depressed for some time, he did not seek any medical or psychiatric assistance. He presented no objectively verifiable indicia of the severity of his emotional distress. We conclude that [plaintiff's] brief depositional testimony regarding depression was insufficient to raise a genuine issue of

> material fact as to whether he suffered severe emotional distress. Accordingly, we conclude that the district court did not err in granting summary judgment on the IIED claim.

970 P.2d 571, 577 (Nev. 1998). The Court reaffirmed the rule this year:

> We have previously required a plaintiff to demonstrate that he or she has suffered some physical manifestation of emotional distress in order to support an award of emotional damages. *See, e.g., Barmettler v. Reno Air, Inc.,* 114 Nev. 441, 448, 956 P.2d 1382, 1387 (1998) ("[I]n cases where emotional distress damages are not secondary to physical injuries, but rather, precipitate physical symptoms, either a physical impact must have occurred or, in the absence of physical impact, proof of 'serious emotional distress' causing physical injury or illness must be presented."); *Chowdhry v. NLVH, Inc.,* 109 Nev. 478, 482–83, 851 P.2d 459, 462 (1993). While we have relaxed the physical manifestation requirement in a few limited instances, *see Olivero v. Lowe,* 116 Nev. 395, 400, 995 P.2d 1023, 1026 (2000) (explaining that the physical manifestation requirement is more relaxed for damages claims involving assault), we cannot conclude that a claim for emotional distress damages resulting from deceptive trade practices in connection with a failed real estate and lending transaction should be exempted from the physical manifestation requirement.

*Betsinger v. D.R. Horton, Inc.*, 2010 WL 2145448, at *3, 126 Nev. 17 (2010). The basis for the emotional distress claims here is not assault. The only symptoms Plaintiffs claim is insomnia and general nervousness, which is not objectively verifiable and will not support emotional distress damages in Nevada for a tort arising out of a purely emotionally upsetting situation, as opposed to a physical injury. There is also no evidence of any Plaintiff having sought psychiatric assistance or medication. The case Plaintiffs cite to support this element of their case involved a plaintiff who had to see a psychotherapist, and that case is an unpublished 1997 case from the Northern District of Illinois. The Court therefore grants summary judgment on this cause of action.

**F.     NIED**

The Nevada Supreme Court last laid out the elements of a separate NIED claim in 1999: "the witness-plaintiff must prove that he or she (1) was located near the scene; (2) was

emotionally injured by the contemporaneous sensory observance of the accident; and (3) was closely related to the victim." *Grotts v. Zahner*, 989 P.2d 415, 416 (Nev. 1999). This is a version of the "*Dillon* rule." Dan B. Dobbs, *The Law of Torts* § 302 (West 2000); *see Dillon v. Legg*, 441 P.2d 912, 920 (Cal. 1968). Nevada expressly adopted the *Dillon* rule in *State v. Eaton*, 710 P.2d 1370, 1377–78 & n.11 (Nev. 1985).

In summary, Nevada recognizes the traditional NIED tort for a bystander's emotional injury caused by witnessing physical injury to a third-person caused by a defendant's negligence. This is the crux of an NIED claim. Although the names of the two causes of action imply that an NIED claim is simply an IIED claim with "negligence" substituted for "intent" (or in some states, such as Nevada, "intent or recklessness"), this is not so. A separate claim of NIED typically lies only where the emotional harm is based on observance of a physical injury to another, usually a close relative.

The Nevada Supreme Court has stated that it recognizes torts for both IIED and NIED in the context of wrongful employment termination, and that in either case, "the plaintiff needs to show 'extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress.'" *State v. Eighth Judicial Dist. Court ex rel. County of Clark*, 42 P.3d 233, 241 (quoting *Shoen v. Amerco.*, 896 P.2d 469, 476 (1995) (quoting *Star v. Rabello*, 625 P.2d 90, 91–92 (Nev. 1981))). This statement requires further analysis, however, because the implication that a claim for NIED must include intent or recklessness on the part of the tortfeasor appears at odds with itself and may be an indication that the Court misspoke when it characterized the nature of the claim. Intent (and in some states, such as Nevada, either intent or recklessness) must be shown to prove IIED, but a separate NIED claim requires only simple negligence.

A closer analysis indicates that the Court in *Eighth Judicial Dist. Court* was not referring to NIED as a separate cause of action, but rather was referring to the fact that damages can be recovered for emotional harm stemming from other intentional or negligent torts. This measure of damages is sometimes called "parasitic damages." *See* Dobbs, *supra*, § 302. This reading is supported by the fact that the Court in *Eighth Judicial Dist. Court* cited only to a page of *Shoen* that discusses IIED, not to the later pages that discuss NIED. Furthermore, *Rabello*, the origin of the above quotation from *Eighth Judicial Dist. Court*, involved no NIED claim at all, but only an IIED claim. *See* 625 P.2d at 91–92. In the relevant passage in *Shoen* that actually discusses NIED—a passage to which the *Eighth Judicial Dist. Court* Court did not cite—the *Shoen* Court stated:

> An examination of the case law indicates that Nevada has not expressly permitted damages to be recovered for the infliction of emotional distress in a negligence cause of action. [But i]f a bystander can recover for the negligent infliction of emotional distress, it is only logical that the direct victim be permitted the same recovery. Many times a tort claim may be based on evidence that presents a close case of whether an intentional or a negligent act was committed. In these cases, the direct victim should be able to assert a negligence claim that includes *emotional distress as part of the damage* suffered as well as an intentional tort cause of action. Accordingly, we recognize that the negligent infliction of emotional distress can be *an element of the damage sustained* by the negligent acts committed directly against the victim-plaintiff.

896 P.2d at 477 (emphases added). *Shoen* recognized that it would be inconsistent to hold that the doctrine of proximate cause permits a separate NIED tort when a bystander who is not physically injured suffers emotional distress by merely witnessing another's injury, but to then hold that emotional distress is unavailable as a measure of damages for the direct victim of the negligence.

Plaintiffs note that under this line of cases no bystander harm is necessary for an NIED claim. But Plaintiffs state the *Shoen* rule too broadly. *Shoen* permits a direct victim of a

defendant's negligence to recover emotional damages, but there still must be an underlying injury separate from the emotional harm. Although *Shoen* made emotional harm available as a measure of damages for a simple negligence claim, the case did not expand the NIED cause of action itself to include an alternative to IIED where the defendant's extreme and outrageous conduct was merely negligent. The significance of the distinction is that to recover parasitic damages for emotional harm based on a simple negligence claim, a plaintiff must prove cognizable harm separate from the emotional harm itself, whereas a putative NIED claim that mirrors an IIED claim in all aspects but mens rea would permit recovery based on emotional harm alone. No such cause of action exists, except in Hawai'i.[3] Because neither a bystander-harm situation nor any physical injury to Plaintiffs is alleged in this case, the Court grants summary judgment on the NIED cause of action. And although emotional harm is potentially available as a measure of damages if other claims in this case are established, *see Shoen*, 896 P.2d at 477, recovery of this measure of damages in Nevada without physical impact requires evidence of physical manifestation, *see Betsinger*, 2010 WL 2145448, at *3.

### G. Punitive Damages

In Nevada, punitive damages may only be awarded "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied." Nev. Rev. Stat. § 42.005(1). "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship with conscious disregard of the rights of the person." § 42.001(4). "'Fraud' means an intentional misrepresentation, deception or concealment of a

---

[3]Only Hawaii permits simple negligence claims based purely on emotional harm without any physical or economic "host" injury—the kind of claim Plaintiffs plead. *See Doe Parents No. 1 v. State Dep't of Educ.*, 58 P.3d 545, 580 (Haw. 2002) ("[A]n NIED claim is nothing more than a negligence claim in which the alleged actual injury is wholly psychic . . . .").

material fact known to the person with the intent to deprive another person of his or her rights or property or to otherwise injure another person." § 42.001(2). "'Malice, express or implied' means conduct which is intended to injure a person or despicable conduct which is engaged in with a conscious disregard of the rights or safety of others." § 42.001(3). "'Conscious disregard' means the knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences." § 42.001(1). "[Conscious disregard] plainly requires evidence that a defendant acted with a culpable state of mind . . . . [A]t a minimum, [it] must exceed mere recklessness or gross negligence." *Countrywide Home Loans, Inc. v. Thitchener*, 192 P.3d 243, 255 (Nev. 2008).

Defendant has not met its initial burden. As Plaintiff notes, Defendant has not even identified, and might not even know, which employee or employees caused the error. Defendant has therefore not shown that there is no genuine issue of material fact as to oppression, fraud, or malice. If an employee is culpable under this standard, so is the employer if it authorized or ratified the action or is otherwise personally responsible. *See* Nev. Rev. Stat. § 42.007(1)(b)–(c). The Court therefore denies the motion as to punitive damages.

## CONCLUSION

IT IS HERBY ORDERED that the Motion for Partial Summary Judgment (#98) is GRANTED in part and DENIED it in part. Summary judgment is granted on the causes of action for breach of the covenant of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, IIED, and NIED. Summary judgment is denied on the cause of action for negligent

/ / /

/ / /

/ / /

misrepresentation and on the issue of punitive damages.

DATED this 19th day of July, 2010.

_____
Gloria M. Navarro
United States District Judge